## COLLINS et al. v. COLLINS, executrix.

1. Under the provisions of a will, in which the testatrix directs that her executrix shall keep her estate intact, as far as practicable, and carry on her business until from the profits of her estate all her debts are paid, and the graves of her immediate family, in designated cemeteries, are fixed to the satisfaction of her daughters then living, with such fences, slabs, or other monuments and protection as her said daughters shall direct, all of these daughters must concur in the amount to be expended, and the method to be followed in fixing these graves; and a majority of the daughters cannot give direction in these matters.

2. This provision of the will creates an imperative power or discretion in these daughters; and if they disagree as to its execution, and if the exercise of the power by them becomes impossible for this or any other reason, the court will imply a trust, put itself in the place of these daughters who are trustees for the purpose of its execution, and exercise this power by the expenditure of a reasonable amount for the proper fixing of these graves, taking into consideration the standing of the testatrix, the amount of her estate, and all pertinent circumstances of the case.

3. Where upon an application for injunction there are issues both of law and fact, and the presiding judge refuses an injunction, resting his decision solely on a point of law, which he erroneously decides, the rule of discretion does not apply, and a reversal must follow.

No. 3884.   December 12, 1923.   Rehearing denied January 19, 1924.

Petition for injunction. Before Judge Custer. Mitchell superior court. June 16, 1923.

The first item of the will of Sarah J. Collins is as follows: "I wish my executor to keep my estate intact as far as practicable, and carry on my business until from the profits of my estate all of my debts are paid and the graves of my immediate family, except Mattie C. Culpepper, both of Camilla and at Arno Schoolhouse graveyard, are fixed to the satisfaction of my daughters then living, with such fences, slabs, or other monuments and protection as my said daughters shall direct." In the second item of her will she bequeathed to her children, Josie F. Collins, Annie Laurie Collins, Alice J. Lee, and Lillie C. Sharp, and her granddaughter, Eula H. Culpepper, share and share alike, all her property, both real and personal, subject to certain provisions which it is unnecessary to set out. The testatrix nominated her daughter, Annie L. Collins, and her brother, W. W. Fitzgerald, and, on his failure her brother, D. B. Fitzgerald, to be joint executors of her will. It does not appear that either W. W. Fitzgerald or D. B. Fitzgerald ever qualified as such executors, but it does appear that they are dead,

and that Annie Laurie Collins is the duly qualified and acting executrix of said will. The daughters of the testatrix living at the time of her death, and who are still living, are Josie F. Collins, Annie Laurie Collins, Alice J. Lee, and Lillie C. Sharp. Josie F. Collins and Benjamin F. Collins filed their petition for injunction against the executrix, in which they alleged, in addition to the foregoing facts, that the executrix intends and is threatening to spend between $7,000 and $10,000 in carrying out item 1 of the will of testatrix, without the consent of Josie F. Collins, without her concurrence, and against her will; that such an expenditure is unreasonable and altogether unsuited to the station in life occupied by the deceased members of the family of testatrix, the marking of whose graves is provided for in said item; that such expenditure will cause irreparable loss to petitioners; that the value of the estate of testatrix is not more than $20,000; and that such expenditure is entirely arbitrary and contrary to the provisions of the will. They prayed that the testatrix be enjoined from paying out any funds to fix the graves of the immediate family of testatrix as provided under the above item of her will, without the consent and concurrence of Josie F. Collins.

In her answer the executrix alleges, that she does not intend and has not intended or threatened to spend any money in improving the graves of the members of the immediate family of the testatrix, and has called no conference because the financial affairs of the estate have not been arranged so said graves may be fixed as provided for by the will, but she hopes that in the course of a year such affairs may be in condition to do so; that as soon as this occurs she intends to call a conference of all of the living daughters of testatrix, and then carry out the provisions of the will as to said graves in accordance with the direction given her by said daughters or a majority of them. She denies that the value of the estate is only $20,000. She alleges that while there has been no suggestion or threat to spend $7,000 on said graves, she would not hesitate to do so if so directed by the living daughters of the testatrix, and would not consider such expenditure unreasonable in view of the value of the estate and the ten graves in separate cemetery lots to be fixed.

On the hearing of the application for injunction the plaintiffs introduced evidence in support of their petition, and the defendant

introduced evidence in support of her answer. It was "conceded by both sides in open court that the injunction should be granted if under item one of the will of Sarah J. Collins all of the daughters of the testator must concur in the amount to be expended in fixing the graves referred to in said item; and it was further conceded by both sides that if a majority of the daughters of Sarah J. Collins can make the expenditure, the injunction should be denied, except that the plaintiffs contended that even if a majority of the daughters could act, the injunction should be granted if the court was of the opinion that they were abusing their discretion in respect to the amount proposed to be expended." The trial judge refused to grant a temporary injunction. To this ruling the plaintiffs excepted.

*Hill & McElvey* and *W. H. Haggard,* for plaintiffs.

*Pope & Bennet,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. The testatrix in item one of her will directs that her executrix shall keep her estate intact, as far as practicable, and that her executrix carry on her business until from the profits of her estate all her debts are paid and the graves of her immediate family, in two designated cemeteries "are fixed to the satisfaction of my daughters then living, with such fences, slabs, ŏr other monuments and protection as my said daughters shall direct." The first question for our consideration is this: Must all of the daughters of the testatrix agree to the amount to be expended in, and the method of, fixing these graves; or can a majority of them act in this matter? Counsel for the defendants insist that in answering this question we need not look beyond paragraph 5 of § 4 of the Civil Code, which declares: "A joint authority given to any number of persons, or officers, may be executed by a majority of them, unless it is otherwise declared." The same principle is enunciated in *Beall* v. *State,* 9 *Ga.* 367, and in *City of Blakely* v. *Singletary,* 138 *Ga.* 632 (75 S. E. 1054). The above section of the code lays down a rule for the construction of powers granted by statutes, and the above cases dealt with statutes which defined the duties and powers of persons exercising public functions. In this State a majority of those who are clothed with public powers, and who are required to exercise public authority and to discharge public duties, can exercise such powers and authority and discharge such duties, because our code

so declares. But when we come to consider the powers and duties of trustees and executors, we find a different rule prevailing. Trustees clothed by will with a power not coupled with an interest must join in its execution; and even in the case of a power coupled with an interest, the survivor cannot execute it, if it appears to have been the intention of the testator that the power shall not be exercised by one alone. *O'Brien* v. *Battle,* 98 *Ga.* 766 (25 S. E. 780). So where several executors of a will have qualified, the joint action of all is necessary to execute a power or special trust created by such instrument. *Weeks* v. *Hosch Lumber Co.,* 133 *Ga.* 472 (66 S. E. 168, 134 Am. St. R. 213); *Daugharty* v. *Drawdy,* 134 *Ga.* 650 (68 S. E. 472); *Board of Education* v. *Day,* 128 *Ga.* 156 (57 S. E. 359); *Rowe* v. *Henderson Naval Stores Co.,* 143 *Ga.* 756 (85 S. E. 917). In the last-cited case the testator authorized the sale of his wild lands "at the discretion of my executors and the ordinary of this county." All of the executors of the will joined in the conveyance of a piece of the wild lands of their testator. The ordinary did not. This court held that the concurrence of the ordinary was necessary for the proper exercise of this power, and that the sale by the executors was void.

It is true that in ordinary acts of administration of an estate the act of one executor is the act of all, and is binding upon the estate. *Hall* v. *Carter,* 8 *Ga.* 388; *Wilkerson* v. *Wootten,* 28 *Ga.* 568; *Willson* v. *Whitfield,* 38 *Ga.* 269; *Weeks* v. *Hosch Lumber Co.,* supra. Does this provision of the will provide for an ordinary act of administration? We think not. The act of fixing up these graves is not an ordinary act of administration, or, if such, the testatrix put it out of this class of acts by putting it out of the power of her executrix alone to perform it, by creating a special trust in this respect, to be supervised by her daughters. No formal words are necessary to create a strict trust. Civil Code (1910), § 3728. Much less are formal words necessary to create a trust of the kind which we are considering. In all such cases the provision imports a power, the power implies a trust, and the trust becomes a duty. *Smith* v. *Floyd,* 140 N. Y. 337 (35 N. E. 606). This being a special trust, if there had been more than one executor and they had all qualified, all would have had to join in its execution. Our code declares that, if more than one executor qualifies, each is authorized to discharge the usual functions of an executor, but

all. must join in executing special trusts, or in making contracts binding upon the estate, or in paying out funds belonging to the estate. Civil Code (1910), § 3893. Whatever may be the law elsewhere, in this State all executors who qualify must join in executing special trusts, or in making contracts binding the estate, or in paying out funds belonging to the estate.

But we are not dealing with the powers of several executors, but the power of a single executrix authorized to act under the direction of the daughters of the testatrix, and in a manner which will satisfy them. Must she get the joint direction of all the daughters? Must her manner of executing the direction of the testatrix meet the approval of all of them? Or will the direction and satisfaction of a majority of the daughters authorize the executrix to act in this matter? By analogy to the doctrine that all the executors who qualify must join in executing special trusts, in making contracts binding the estate, or in paying out funds of the estate, we think that all these daughters must join in executing this trust. As to this matter they are trustees or quasi trustees under whose direction the executrix must act. Their power, interest, and authority are equal and undivisible. They cannot act separately, but must act as a unit. 39 Cyc. 307. This authority must be exercised to the satisfaction of all, and not a majority of the living daughters, and in such manner as all shall direct. This power or authority comes from the will, which is the law of the case. The testatrix has declared that it must be exercised to the satisfaction of her living daughters, not a majority but all, and in the manner that all shall direct. If the testatrix had intended that a majority of her living daughters should direct in this matter, she could easily have so said.

2. What would be the effect of the failure of the living daughters to agree in this matter? Would such failure have the dire consequences which counsel for the defendants predict? Would it be in the power of one of the daughters to defeat the plain purpose of the testatrix? Could a majority direct that these graves of the immediate members of the family of the testatrix shall not be fixed at all, and thus nullify this provision? We think not. Neither one nor a majority or all of these daughters can defeat the execution of this trust. The provision, that these graves must be fixed to the satisfaction of the living daughters of the testatrix, does not put in the power of one, a majority, or all of these daugh-

ters to defeat the sacred purpose of the testatrix. In contracts for services or for the purchase of goods, which provide that the services and goods must be to the satisfaction of the master or purchaser, the master can discharge the servant, or the purchaser can reject the goods, if he is dissatisfied with them, whether there were reasonable and sufficient grounds for such dissatisfaction or not. *Mackenzie* v. *Minis,* 132 *Ga.* 323 (63 S. E. 900, 23 L. R. A. (N. S.) 1003, 16 Ann. Cas. 723). But a different rule applies in the execution of special trusts. Words of mere authority have the same effect in creating a trust as a positive direction; and words which in their ordinary acceptation may imply discretion, in a court of conscience are mandatory. Dominick *v.* Sayre, 3 Sandf. (N. Y.) 555.

If the daughters of the testatrix find that they are unable to agree upon a plan for the execution of this trust, then the executrix can proceed in equity, either in the present or some other proceeding, to execute this authority and trust reposed in the daughters by their mother. Trusts of every kind not generally cognizable at law are peculiar subjects of equity jurisdiction. Civil Code (1910), § 3779. The relief granted will always be so molded and framed as to render the trust effectual, and secure the best interest of all parties. Civil Code (1910), § 3783. "A court of equity will not allow the trust to be destroyed by the refusal of the person nominated as trustee to accept the trust, or his declination or failure to execute it, if, by any possibility, it is capable of execution by the court." *Prince* v. *Barrow,* 120 *Ga.* 810 (3) (48 S. E. 412). "In all cases where parties have an *imperative power or discretion* given to them, and they die in the testator's lifetime, or decline the trust or office, or disagree as to the execution of it, or do not execute it before their death, or if from any other circumstances the exercise of the power by the party intrusted with it becomes impossible, the court will imply a trust, and will put itself in the place of the trustee, and will exercise the power by the most equitable rule." 1 Perry on Trusts, § 249. So in this case, if these daughters, in disregard of filial love and piety and of their duty as trustees, fail to execute this imperative power or discretion, the court will imply a trust, will put itself in the place of the daughters, and will exercise this power by fixing these graves in a proper manner and at a reasonable expense under all the circumstances.

3. Counsel for the defendants insist that the discretion of the trial judge in refusing to grant an injunction should not be interfered with by this court. Under the stipulations of the parties, an injunction should have been granted if the concurrence of all of the daughters of the testatrix was necessary to enable the executrix to execute this trust: and the trial judge seems to have placed his grant of an injunction upon the theory that the consent of all the daughters was not necessary. Where upon an application for injunction there are issues both of law and fact, and the presiding judge refuses an injunction, resting his decision solely on a point of law, which he erroneously decides, the rule of discretion does not apply. *Hill* v. *Wadley Southern Railway Co.*, 128 *Ga.* 705 (7) (57 S. E. 795).

*Judgment reversed. All the Justices concur, except Russell, C. J., dissenting.*