## ROWE v. HENDERSON NAVAL STORES COMPANY.

1. Where a deed attested by unofficial witnesses is offered in evidence as an ancient document, its existence for more than thirty years must be made to appear. The purporting date is, of itself, insufficient to show the antiquity of the document.

2. A judgment of confirmation by the ordinary is a prerequisite for the record of the return of partitioners dividing the real estate of a decedent among his distributees, made by virtue of an order of the ordinary under the Civil Code (1910), §§ 4058, 4059.

3. A testator authorized the sale of his wild land "at such time and place as may be to the best interest of my estate, at the discretion of my executors and the ordinary of this county." Three executors were nominated and qualified. They sold and conveyed a lot of wild land. The ordinary of the county did not join in the conveyance, nor did it appear that he assented to the sale. *Held:* (a) A power conferred on a person who, at the time of the exercise of the power, may hold a particular office attaches to the individual filling the office, and not to the office. (b) The concurrence of the ordinary was necessary for the proper exercise of this power. (c) The subsequent passing by the ordinary of an order empowering the executors to sell the wild land of the testator at their discretion is not a ratification of the prior sale of a particular lot of wild land by the executors.

4. The return of the partitioners of W. W. Gaskins sufficiently identified the land as located in the county of Berrien.

5. An administrator of a decedent applied to the court of ordinary for partition of the land of his intestate between his two heirs at law. Partitioners were appointed and made their return, but no judgment confirming the same appeared to have been entered upon such return. The return was recorded, and the heirs entered into possession of their respective moieties as assigned by the partitioners. *Held*, that the return of the partitioners, adopted by the distributees, constitutes color of title, upon which a distributee may base a prescriptive title by adverse possession.

6. Where in such a partition proceeding the partitioners in their return assigned to a distributee several distinct lots of land, two of which are contiguous but not described as a single body of land, the possession of

one of the contiguous lots will not be extended by construction over the other, so as to make such constructive possession adverse to the true owner of the lot.

7. Other assignments of error are controlled by the foregoing rulings.

JULY 21, 1915.

Equitable petition. Before Judge Thomas. Berrien superior court. July 18, 1914.

*Knight & Chastain* and *N. Gaskins,* for plaintiff in error.
*Denmark & Griffin* and *H. J. Quincey,* contra.

EVANS, P. J. The Henderson Naval Stores Company, a partnership composed of J. A. J. Henderson and Resin Henderson, brought their action to restrain M. Rowe from cutting, destroying, or otherwise injuring the timber on lot of land number 508 in the 6th district of Berrien county. The defendant denied the plaintiffs' title to the timber on the land, and by way of cross-action set up title to the land in himself, and alleged that the plaintiffs were cutting the timber on the lot of land, and prayed an injunction against them. A verdict was directed by the court for the plaintiffs, and the defendant moved for a new trial, which was refused.

1. Both sides deraigned title from John Reynolds, to whom the land was granted by the State in November, 1839. The plaintiffs offered in evidence a deed purporting to have been made by John Reynolds to James M. Davison on December 12, 1839. The deed was attested by unofficial witnesses, and had never been recorded. Objection was made to its being received in evidence, on the ground that its execution was not proved, and that it was not shown to have come from the proper source or that it had been in existence for thirty years. The statute declares that a deed more than thirty years old, having the appearance of genuineness on inspection, and coming from the proper custody, if possession has been consistent therewith, is admissible in evidence without proof of its execution. Civil Code (1910), § 4190. When a deed is offered as an ancient document, its existence for thirty years must be made to appear. "The purporting date is of itself nothing, for anybody may have forged the written date but yesterday." 3 Wigmore on Evidence, § 2138 (3). In *Pridgen* v. *Green,* 80 *Ga.* 737 (7 S. E. 97), the deed offered as an ancient document had endorsed thereon an affidavit for probate by one of the subscribing witnesses, made shortly after the deed purported to have been executed, and this was deemed a sufficient circumstance to show that the deed had been in

existence since the making of the affidavit of probate, which was more than thirty years, to admit the deed in evidence. There was nothing tending to show the age of the deed, and the court erred in receiving it in evidence.

2. The plaintiffs introduced in evidence an exemplification of the record of an application to the court of ordinary of Greene county, to divide the estate of James M. Davison in kind, the order of the ordinary appointing appraisers, and their return. Attached to the petition was a long list of land lots owned by the intestate. There was no land lot described as 508, but there was a lot described as 568. Accompanying the application was an order of the ordinary appointing freeholders to divide the wild land among the distributees of James M. Davison; and the return of the appraisers shows lot 508 assigned to James Davison. Objection was made, that, inasmuch as there was no lot described as 508 in the application, the appraisers appointed to divide the land had no authority to include that lot in the division of the estate, and that there was no order confirming the return of the appraisers. With reference to the first objection, it is a palpable clerical error. James M. Davison did not claim lot 568; indeed there is no such lot as 568 in the 6th district of Berrien county. The appraisers did not undertake to apportion lot 568, but did apportion 508. They discovered the mistake in the number and corrected it in their return; and it amounts to only an irregularity and will not vitiate the division. The second objection is, that the exemplification does not disclose any order making the return of the commissioners the judgment of the court. The statute provides for a division in kind of the land of a deceased person among his distributees. The procedure is, that, on application by the representative of the estate or a distributee, the ordinary shall appoint appraisers who shall make a written return. Any party in interest may file objections to such return before it is made the judgment of the court of ordinary. If such objections be sustained, the ordinary shall order a new division by the same or other partitioners. Civil Code (1910), §§ 4058, 4059. There was testimony of an attorney at law that he had examined the records of the ordinary of Greene county and could not find any judgment upon the book of minutes, or other record in that office. Compliance with the statute requires that the ordinary shall make the return of the commissioners his

judgment, before it is entitled to be recorded in his office. His failure in this respect did not authorize the record of the return of the commissioners. While the Civil Code (1910), section 4815, makes it the duty of the ordinary to record the proceedings of the court of ordinary in proper books kept for that purpose, a return of partitioners, which has not been made the judgment of the court, is improperly recorded. The return of the commissioners is made effective by the judgment of the ordinary, and without such judgment neither the return nor other proceedings are entitled to record. Whether the return itself or a certified copy of it will serve as a color of title on which to base prescription will be considered in another part of this opinion.

3. James Davison died testate. His will was duly probated, and his executors, three in number, qualified. The 7th item of his will was as follows: "It is my will and desire that my wild land be sold at such time and place as may be to the best interest of my estate, at the discretion of my executors and the ordinary of this county." The three named executors joined in a conveyance of the land in controversy to W. W. Gaskins. This conveyance was dated October 8, 1880, properly executed, and recorded. When this deed was offered in evidence it was objected to on the ground that the deed was not executed pursuant to the power in the will, inasmuch as it did not appear that the ordinary of Greene county had joined in or assented to the conveyance. All of the executors joined in the execution of the deed, and its validity depends upon the necessity of its appearing that the ordinary approved the sale by the executors. It is contended that the testator's attempt to confer a discretionary power on the ordinary is invalid, because whenever a power is conferred on a donee as a matter of discretion it can not be exercised by a court. On the other hand, it is contended that where a power is conferred on a person who may, for the time being, fill a particular office, the power attaches to the individual filling the office at the time of the exercise of the power and not to the office, and therefore that the concurrence of the ordinary was essential to the exercise of the power of sale by the executors. We are inclined to take this latter view as applicable to the facts of this case. The testator's intention was to authorize the sale of his wild land at such times and places as, in the joint discretion of his executors and the incumbent of the office of ordinary at the time of

the exercise of the power, might be deemed to be to the best interest of his estate. In connection with the deed the plaintiffs also introduced a certified copy of the order granting to the executors of James Davison power to sell, at their discretion, at private sale all of the wild land belonging to their testator. The date of this order was 26 days after the execution of the deed by the executors. It is contended that this order cured the omission of the ordinary to assent to the execution of the deed. We do not think so. It does not purport to be a ratification of a past transaction, but grants authority for a future transaction, and therefore, by its own terms, can give no sanction to what has already been accomplished.

4. It was shown that W. W. Gaskins died a resident of Berrien county, leaving a widow and one son as his sole heirs at law. The plaintiffs offered in evidence a certified copy of an application by the administrator of W. W. Gaskins to divide a number of lots of land, described as lying in Berrien county, between the widow and son of his intestate, the order of the ordinary thereon, and the return of the commissioners. The exemplification appears to be a certified copy of the original papers, and not an exemplification from the record. Included in the land sought to be partitioned are lots 508 and 509, described as located in the 6th district of Berrien county. The order to the appraisers directed them to make an equal distribution of the land of the estate of W. W. Gaskins between his distributees; and the return of the appraisers dividing the lots between the widow and her son awarded lots 508 and 509, as well as other lots, to P. H. Gaskins. Objection was made to the return, on the ground that it did not disclose that lots 508 and 509 were located in Berrien county. The reply to this objection is, that they are described as being in the 6th district and embraced within the lands which the appraisers were directed to divide between the distributees of W. W. Gaskins, and in the application the land was described as being in Berrien county. The entire partition proceedings sufficiently identify the lots of land as being in Berrien county.

5. Another objection was, that there was no order of the court of ordinary confirming the return of the commissioners in the matter of the division of the estate of W. W. Gaskins, and without this order there was no evidence of any valid division. As pointed out in a former part of this opinion, a judgment of confirmation is

essential to the validity of the division of the estate according to the statute. But it further appeared that the distributees went into possession of their respective moieties, treating the division as valid, and have so remained for more than twenty years. It has been held that a written agreement to divide lands claimed in common, though made by the administrator of one of the tenants in common without an order of court for the partition thereof, is good color of title. *Shiels* v. *Lamar,* 58 *Ga.* 590, 591. Likewise the return of commissioners assigning to each distributee his interest in the estate will serve as color of title, when the respective moieties are sufficiently described, although such return has not been made the judgment of the court. In the partition proceeding land lots 508 and 509 in the 6th district, and other lots in the 5th and 10th districts, were assigned to P. H. Gaskins. Lots 508 and 509 are contiguous lots. It was admitted that P. H. Gaskins was in actual possession of lot 509, and had been so since the partition of his father's estate in 1882. No actual possession of lot 508, except the occasional cutting of timber, was shown. It is contended that P. H. Gaskins' possession of lot 509 extended over the contiguous lot 508, and that he was constructively in possession of that lot under the partition allotment. The plaintiffs having connected themselves with that possession, the question is, whether, under these facts, they show a prescriptive title.

6. The code declares that "Constructive possession of lands is where a person having paper title to a tract of land is in actual possession of only a part thereof. In such a case, the law construes the possession to extend to the boundary of the tract." Civil Code (1910), § 4166. Where several lots of land are conveyed in one deed under several descriptions of each, and not under one general description including them all in a single tract, the actual possession of one of them will not give constructive possession of the balance of the lots. *Griffin* v. *Lee,* 90 *Ga.* 224 (15 S. E. 810). In cases where several lots are so described as constituting a single tract, the possession of one of them will constructively extend over the whole tract described in the deed. *Johnson* v. *Simerly,* 90 *Ga.* 612 (16 S. E. 951). Where the description in a deed grouped several lots together by numbers, then proceeded "also" another distinct lot and fraction of lot, and finally "also" certain other lots described by numbers, it was held that where such a description as

a whole did not include a single body of land, or a number of lots which by their contiguity in substance formed a single tract, it did not meet the requirement of the above-quoted code section. *Durham Coal & Coke Company* v. *Wingfield,* 142 *Ga.* 725 (83 S. E. 683). But it is contended that another code section (4167) provides that "Possession under a duly recorded deed will be construed to extend to all the contiguous property embraced therein;" and that, inasmuch as a partition allotment is the substantial equivalent of mutual deeds by joint owners to each other conveying their interests in severalty, this section will also apply to a partition by the ordinary, where such partition is recorded. Whatever may be the holding with respect to the effect of the record of a deed to lots not described as a single tract, the code section has no application to the record of a partition proceeding, and especially where that proceeding is improperly recorded for lack of a judgment of confirmation of the return of the commissioners. Inasmuch as the land assigned to P. H. Gaskins in the partition consisted of several distinct lots of land, two of which were contiguous, the possession of one of them, namely, 509, will not be constructively extended to the other lot, 508, so as to give him prescriptive title to lot 508, which was not in his actual possession.

7. Other points made in the record are involved in and controlled by the foregoing rulings, and for that reason specific discussion of them is omitted. Inasmuch as the evidence was insufficient to show complete title in the plaintiffs from the State's grantee, and is also insufficient to show a good prescriptive title to the land lot embracing the timber in dispute, it was error for the court to direct a verdict for the plaintiffs.

*Judgment reversed. All the Justices concur.*